**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ALLEN BODNAR and
TIFFANY BODNAR,

      Plaintiffs,

          v.

KEVIN WAGNER and
SCOTT NICHOLAS,

      Defendants.

CIVIL ACTION NO. 3:07-CV-2038

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment of Defendants Kevin

Wagner and Scott Nicholas.  (Doc. 35.)  The Court will grant the Defendants' motion in part

and deny it in part, as stated below.  This Court has jurisdiction over the Plaintiffs' federal

claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and over the state law

claims pursuant to 28 U.S.C. § 1367 ("supplemental jurisdiction").


**BACKGROUND**

**I.  Factual Background**

The events relevant to this litigation occurred on December 15, 2005.  (Allen Bodnar

Dep., 41:21-22, Feb. 5, 2009.)  While driving from his brother's house to his mother's house,

the mirror of a truck driven by Plaintiff Allen Bodnar ("Bodnar") struck the mirror of another

vehicle.  (Bodnar Dep. 54:3-8.)  Bodnar did not stop and instead continued to his mother's

home.  (Bodnar Dep. 54:8-11.)  Bodnar went into the home and sat at the table in the

kitchen.  (Bodnar Dep. 75:22-76:6.)  After a few minutes, Bodnar's sister also arrived at the

home.  (Bodnar Dep. 78:7-9.)

A knock on the door was answered by Bodnar's sister.  (Bodnar Dep. 80:2-3.)  Both Officer Scott Nicholas ("Nicholas") and Officer Kevin Wagner ("Wagner") were at the door.  (Bodnar Dep. 80:3-4.)  At this time, Bodnar was still sitting by the kitchen table.  (Bodnar Dep. 80:7-8.)  The floor of the kitchen is linoleum.  (Bodnar Dep. 75:2-4.)  Nicholas entered and asked Bodnar if he knew that he had been involved in an accident.  (Bodnar Dep. 80:7-10.)  Bodnar denied that he had been involved in an accident.  (Bodnar Dep. 80:10-13.)  Nicholas "kept going on about it" while Wagner stared at Bodnar.  (Bodnar Dep. 80:13-16.)  Bodnar refused to give Nicholas his license or any other identifying information, despite being requested to do so numerous times.  (Bodnar Dep. 86:11-16.)  Bodnar started to get frustrated and aggravated.  (Bodnar Dep. 81:16, 97:22-25.)  Bodnar was pacing around the kitchen.  (Bodnar Dep. 94:7-12.)  The parties assert two different versions of the events which occurred next.

A.  Bodnar's Version

Bodnar asserts that Wagner then told him he was under arrest and instructed him to put his hands behind his back.  (Bodnar Dep. 81:20-24.)  Bodnar states that he complied, but that as Wagner was pulling his arms back it hurt Bodnar's shoulder.  (Bodnar Dep. 81:23-82:2.)  Wagner allegedly told Bodnar to stop resisting, to which Bodnar answered that he was not resisting.  (Bodnar Dep. 82:2-3.)  Bodnar alleges that Wagner then kicked his ankle and caused him to fall forward to the floor.  (Bodnar Dep. 82:3-5.)  Bodnar's sister recalled hearing his leg pop.  (Trial Transcript, 121:14-21, June 13, 2007 (hereinafter "TT"); June Bodnar Dep. 52:11-14, Dec. 2, 2008.)  As Bodnar tried to get up, Wagner kicked the back of Bodnar's head and banged it off the floor a few times.  (Bodnar Dep. 82:6-8; June Bodnar Dep. 52:15-18.)  Bodnar kept his hands under himself to protect his face from the

2

floor.  (June Bodnar Dep. 59:25-60:6.)  Nicholas said something to Wagner, and Wagner got off of Bodnar.  (Bodnar Dep. 82:15-16.)  Bodnar attempted to stand, but could not, and he felt that his leg was broken.  (Bodnar Dep. 82:18-19.)  Then both officers grabbed him and slammed him to the floor.  (Bodnar Dep. 82:19-20.)

The officers then "drove" Bodnar down the stairs and out of the house to the police car.  (Bodnar Dep. 82:21-24.)  Bodnar's mother testified that the officers "drug [sic] him like a dog."  (TT 161:13-16.)  Bodnar's leg continued to hurt through the following morning, but he was told that it was "too late" to receive medical care.  (Bodnar Dep. 112:1-4.)  The following morning he was taken to the hospital where he was told his leg was broken.  (Bodnar Dep. 112:5-15.)  A few days later Bodnar was told that the charges against him would be dropped if he did not retain a lawyer.  (Bodnar Dep. 112:19-113:12.)

B.  Defendants' Version

At one point during the requests for information, Bodnar lunged at Wagner with a clenched fist at his side.  (TT 56:12-24.)  Wagner then grabbed the front of Bodnar's shirt and told him he was under arrest.  (TT 57:1-4.)  The two struggled for a few seconds, after which they slipped on the wet linoleum floor and fell to the ground.  (TT 57:5-14, 96:16-24.)  Bodnar and Wagner then struggled on the floor, with Bodnar trying to push himself up.  (TT 58:9-13.)  At some point Bodnar's arms gave out and he slammed on the floor where both officers were able to handcuff him.  (TT 58:15-19.)  Nicholas assisted by grabbing one of Bodnar's arms, allowing handcuffs to be placed upon Bodnar.  (TT 98:10-21.)  Nicholas did not see Bodnar's head smash against the floor.  (TT 75:7-19.)

3

## II.  Procedural Background

On November 8, 2007, Plaintiffs filed this suit in the United States District Court for the Middle District of Pennsylvania.  (Doc. 1.)  On November 16, 2009, the Defendants filed a motion for summary judgment.  (Doc. 35.)  The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.   Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the

4

nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiffs' complaint raises claims against Wagner and Nicholas are pursuant to § 1983 for violation of Bodnar's constitutional rights. To prevail on a § 1983 claim, a plaintiff must demonstrate that a state actor deprived him of a federally protected right, privilege, or immunity. 42 U.S.C. § 1983; *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The parties do not dispute that Wagner and Nicholas, as municipal police officers, acted under color of state law during the events giving rise to this suit.

I.      **Excessive Force - Fourth Amendment**

At Count I, Plaintiffs allege that the Defendants are liable for their use of excessive force.  At Count II, they allege that the Defendants are also liable for failure to intervene to stop any unlawful acts committed by the other officer.  The Fourth Amendment protects individuals against unreasonable search and seizure by the government.  "Use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment . . . ."  *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)

A.      Unreasonable seizure

Defendants argue that the seizure of Bodnar was reasonable and therefore it did not violate the Fourth Amendment.  To make out an excessive force claim under the Fourth Amendment, a plaintiff must show that an unreasonable seizure occurred.  *Curley v. Klem*, 499 F.3d 199, 203 n. 4 (3d Cir. 2007).  A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *Id*. at 396.  Additional factors include: the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *See Sharrar v. Felsing*, 128 F.3d

6

810, 822 (3d Cir. 1997).  The "reasonableness" of a particular use of force must be judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight.  *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"The reasonableness of the use of force is normally an issue for the jury."  *Rivas v.*

*City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  "[A] police officer who is accused of

having used excessive force is not 'precluded from arguing that he reasonably perceived the

facts to be different from those alleged by the plaintiff,' but that 'contention . . . must be

considered at trial.'"  *Id*. at 199 (quoting *Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002))

(emphasis omitted).  However, "defendants can still win on summary judgment if the district

court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's

use of force was objectively reasonable under the circumstances."  *Kopec v. Tate*, 361 F.3d

772, 777 (3d Cir. 2004) (citations and internal quotation marks omitted).

The Defendants argue that Bodnar's failure to comply with their commands and his

resistance, as evidenced through his criminal convictions, demonstrate that their use of force

was reasonable.  The fact that Bodnar resisted and that *some* force was reasonable does

not, however, automatically render the officers conduct as reasonable.  For example, the use

of deadly force in this case would have been an unreasonable use of force given the

situation described by either party.  In the light most favorable to the non-moving party, the

Plaintiffs,  a reasonable jury could find that the Defendants used an unreasonable amount

of force.  Bodnar states that his leg was kicked without provocation (Bodnar Dep.82:3-5), that

he was kicked in the head and had his face smashed into the floor (Bodnar Dep. 82:6-8),

and that he was left to suffer a broken leg overnight without medical treatment (Bodnar Dep.

7

112:1-4).  If believed, these allegations would support a claim for an unreasonable seizure under the Fourth Amendment.

The Defendants also deny many of Bodnar's factual allegations, such as the allegation that Bodnar was taken to the ground.  While ultimately a fact-finder may agree with their arguments, these types of genuine disputes of fact cannot be resolved at this stage.  It will be for a jury to determine which version of events to believe, and to accordingly determine if any force used was reasonable.  The Defendants' motion for summary judgment will be denied as to Count I.

B.      Duty to Intervene ("Bystander liability")

Plaintiffs' claim at Count II purports to be based upon "bystander liability," but should really be characterized as a claim based upon an officer's duty to intervene.  "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  An officer is liable under § 1983 for such a failure, but only if there is a "realistic and reasonable opportunity to intervene."  *Id*. at 650-51.  Defendants correctly argue that if there was no use of excessive force in effecting Bodnar's arrest, then there could likewise be no claim for failing to intervene.  As stated above, however, there are still genuine issues of material fact as to whether excessive force was used, making summary judgment inappropriate.

Nicholas also argues that he cannot be liable for any excessive use of force because the events "happened to so fast" that he would have no reasonable opportunity to believe. This argument fails for two reasons.  First, it assumes that the Defendants' version of events is accurate in that the only force applied to Bodnar was during the seconds he was

8

restrained on the floor.  Bodnar, however, asserts that the physical abuse lasted much longer.  (Bodnar Dep. 81:23-82:2, 82:6-8.) Second, this argument ignores the Plaintiffs' claims relating to the unreasonable use of force during the Bodnar's transport to the police station and the subsequent time period when he was placed in a holding cell. (Bodnar Dep. 112:1-4.)  Nicholas clearly would have had sufficient time to react to either of those situations.  Defendants' motion for summary judgment will be denied as to Count II.

      C.    Qualified Immunity

Defendants next argue that they are entitled to qualified immunity.  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).  Second, "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" *Id*.  A right is clearly established when its meaning is "sufficiently clear that a reasonable official would understand what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The U.S. Supreme Court recently held there is no mandatory sequence in applying the two steps of the analysis. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 2009 U.S. LEXIS 591 (2009).  Thus, a determination that there exists a dispute of fact as to the first step does not necessarily preclude the application of qualified immunity if the right at issue was not clearly established.

9

Viewing the disputed facts in light most favorable to the Plaintiffs, the Defendants are not entitled to qualified immunity at this stage.  As the Third Circuit Court of Appeals has noted, the "factors relevant to the excessive force analysis are well-recognized." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006); *see also Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005) ("A reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation," and thus "if an officer applies the *Sharrar* analysis in an unreasonable manner, he is not entitled to qualified immunity.").  As discussed above, under existing precedent, the relevant factors would suggest that little or no force was reasonable once Bodnar was on the floor and handcuffed in the presence of two officers. *See also Couden*, 446 F.3d at 497 (no qualified immunity on excessive force claim where there was no indication plaintiff was a threat, armed, resisting, or attempting to flee, and sufficient officers were present to subdue plaintiff if necessary). Because genuine issues of material fact remain as to the amount of force, if any, that the Defendants used, the motion for summary judgment on this issue will be denied.

## II.   Due Process - Fourteenth Amendment

At Count IV the Plaintiffs allege that they are entitled to damages for the Defendants violations of Bodnar's Fourteenth Amendment rights under the Due Process Clause. The Defendants move to dismiss the Fourteenth Amendment due process claims against them on the ground that they improperly duplicate the Fourth Amendment excessive force claims. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these

10

claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The Fourth Amendment protects individuals from the use of excessive force by government actors performing a seizure. *Graham*, 490 U.S. at 388.  This protection applies from the point of seizure until the individual seized becomes a pre-trial detainee. *See Donahue v. Gavin*, 380 F.3d 371, 382 (3d Cir. 2002) ("[W]e refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention.") Thereafter, the Due Process Clause of the Fourteenth Amendment provides continuing protection. *See James v. York County Police Dep't*, 160 F. App'x 126, 131 (3d Cir.2005).

The Courts of Appeal which have addressed when claims of excessive force should be analyzed under the Fourteenth Amendment, rather than the Fourth Amendment, have reached differing conclusions.  The Courts of Appeals for the Second, Sixth, and Ninth Circuits have all held that the Fourth Amendment coverage extends throughout the time period the defendant remains with the arresting officers. *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989); *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988); *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir. 1985).  The Courts of Appeals for the Ninth and Tenth Circuits have held that the protections of the Fourth Amendment extend until persons arrested without warrant appear before a judicial officer for a probable cause determination. *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991)).  Other Courts of Appeal, including the Fourth, Fifth, Seventh, and Eleventh Circuits have rejected the argument of "continuing seizure" and have instead focused when the act of seizure ends.  *Riley v. Dorton*, 115 F.3d 1159, 1163-64 (4th Cir. 1997); *Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir. 1994); *Garcia v. City of*

*Chicago*, 24 F.3d 966, 971 n.6 (7th Cir. 1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996)).

Courts in the Third Circuit have encountered difficulty in defining precisely when this transition occurs. *See, e.g., United States v. Johnstone*, 107 F.3d 200, 207 (3d Cir.1997) ("Where the seizure ends and pre-trial detention begins is a difficult question."); *Hill v. Algor*, 85 F.Supp.2d 391, 402-04 (D.N.J.2000) (collecting cases from various circuit courts of appeals representative of disagreement regarding when a seizure ends and pretrial detention begins). The Fourth Amendment clearly applies to government conduct during the course of an arrest, and it continues during transportation of an arrestee to the police station. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995) (analyzing alleged excessive force used by police to transport arrestee from a police vehicle into the station under the Fourth Amendment). Once station house detention ensues, courts have evaluated factors such as the length of time in custody, whether the arrestee has been transferred out of the custody of the arresting officers, and whether the arrestee has been arraigned to determine whether an arrestee's constitutional protections derive from the Fourth or the Fourteenth Amendment. *Dull v. West Manchester Twp. Police Dept.*, No. 07-cv-307, 2008 WL 717836, at * 9 (M.D. Pa. Mar. 17, 2008) (citing *Stephens v. City of Butler, Ala.*, 509 F.Supp.2d 1098, 1108-09 (S.D. Ala. 2007)).

Plaintiffs argue that there were at least two acts committed beyond the scope of the Bodnar's arrest: (1) he was dragged along the ground to the police car while suffering from a broken leg; (2) he was left in a holding cell for nine (9) hours without being given medical

care.  (Plaintiffs' Opp'n Brief 12, Doc. 39.)[1]  It is absolutely clear that any conduct which alleged occurred enroute to the station is still within the ambit of the Fourth Amendment. *Groman*, 47 F.3d at 633-34 (abuse during transport in police vehicle and while entering station under the Fourth Amendment).  The more difficult question is whether the hours Bodnar was held in the holding cell were protected by the Fourth or Fourteenth Amendment. Given the immediate proximity to the arrest, the fact that the injuries for which medical care were needed were allegedly caused during the arrest, the fact that the same two officers continued to control the Bodnar, and the fact that the he was arrested without a warrant and had not yet been arraigned before a judicial officer, I find that the Plaintiffs' claims should be analyzed as being before pre-trial detention began.  Therefore, the Fourth Amendment provides an explicit textual source of constitutional protection for the harms alleged, and Plaintiffs' claims at Count IV under the Fourteenth Amendment duplicate the claims previously raised at Counts I and II.  The Defendants' motion for summary judgment as to Count IV will be granted.

## III.    Excessive Force - Pennsylvania Constitution

Plaintiffs allege at Count III that the Defendants' use of excessive force also violated Bodnar's rights under Article I, §§ 8 and 9 of the Pennsylvania Constitution, and thus he is entitled to monetary damages.  The Defendants argue that no private cause of action for damages available under the Pennsylvania Constitution.  Plaintiffs correctly note that the Supreme Court of Pennsylvania has not ruled on this issue. *Hellmann v. Kercher*, No. 07-cv-

---

[1]  Plaintiffs' Brief in Opposition does not actually contain numbered pages, but the argument in question appears on page 12 as numbered in the electronically submitted document.

1373, 2009 WL 586511, at * 5 (W.D. Pa. Mar. 6, 2009).  While this is true, other courts to

consider this issue have uniformly held that the Pennsylvania Constitution does not create

a private right of action.  *Id.*; *see R.H.S. v. Allegheny County Dept. of Human Servs., Office*

*of Mental Health,* 936 A.2d 1218, 1225-226 (Pa. Commw. Ct. 2007) *appeal denied,* 954 A.2d

579 (2008) ("neither statutory authority, nor appellate case law has authorized the award of

monetary damages for a violation of the Pennsylvania Constitution") (quoting *Jones v. City*

*of Phila.*, 890 A.2d 1188 (Pa. Commw. Ct. 2006), *appeal* denied, 909 A.2d 1291 (2006));

*Morales v. Taveras*, No. 05-cv-4032, 2007 U.S. Dist. LEXIS 4081, at *55-56 (E.D. Pa. Jan.

18, 2007); Underwood *v. Beaver County Children And Youth Servs.*, No. 03-cv-1475, 2007

WL 3034069, *2 (W.D.Pa. Oct.7, 2007) (citing multiple cases in accord).  I agree with these

decisions, and find that there is no private cause of action available for seeking monetary

damages for violations for the Pennsylvania constitution.  Summary judgment will be granted

for the Defendants as to Count III.

## IV.    Assault and Battery

At Count V, the Plaintiffs allege that the Defendants are also liable under

Pennsylvania law for assault and battery.  Generally, "[a]ssault is an intentional attempt by

force to do an injury to the person of another, and battery is committed whenever the

violence menaced in an assault is actually done, though in ever so small a degree, upon the

person."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citing *Cohen v. Lit Bros.*,

70 A.2d 419, 421 (Pa. Super. Ct. 1950)).  Reviewing the evidence in the light most favorable

to the Plaintiffs, a genuine issues of material fact remain as to the Defendants' conduct.

Bodnar's version of events, if believed, would establish claims assault and battery against

14

both Defendants.  Defendants' motion for summary judgment will be denied as to Count V.

**V.      Loss of Consortium**

The Defendants argue that because summary judgment should be granted in their favor on each of the other Counts, they are also entitled the summary judgment on Count VI.  Because damages for loss of consortium are available under Counts I, II, and V, and because there are still genuine issues of material fact as to those counts, I will deny the Defendants' motion as to Count VI.

**VI.     Punitive Damages**

Defendants argue that there is insufficient evidence to support an award of punitive damages, and therefore, summary judgment is appropriate in their favor.  In suits brought pursuant to 42 U.S.C. § 1983, punitive damages may be recovered from individual officers but not from government entities, if the officers "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  The evidence on the record is sufficient for a jury to find that punitive damages are appropriate.  Specifically, there is evidence, if believed, that an officer intentionally kicked Bodnar (Bodnar Dep. 82:3-5), smashed his face into the ground (Bodnar Dep. 82:6-8; June Bodnar Dep. 52:15-18), dragged his broken leg across the ground (TT 161:13-16), intentionally refused to provide medical care overnight (Bodnar Dep. 112:1-4), and attempted to evade review of their conduct after the fact (Bodnar Dep. 112:19-113:12).  Such evidence could support a finding of punitive damages.  Defendants' motion for summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment of Defendants Wagner and Nicholas will be granted in part and denied in part.  (Doc. 35.) Summary judgment will be granted as to Count III because there is no private cause of action available for violations of the Pennsylvania Constitution.  Summary judgment will also be granted for Count IV because the Fourth, not the Fourteenth, Amendment would provide protection to Bodnar from the Defendants' alleged conduct.  Genuine issues of material fact exist as to the remaining Counts, and therefore summary judgment will be denied.  The Court will grant the motion with respect to Counts III and IV, and deny the motion as to the remainder.

An appropriate Order follows.


  January 5, 2010                          /s/ A. Richard Caputo
Date                                   A. Richard Caputo
                                       United States District Judge

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ALLEN BODNAR and
TIFFANY BODNAR,

     Plaintiffs,

        v.

KEVIN WAGNER and
SCOTT NICHOLAS,

     Defendants.

CIVIL ACTION NO. 3:07-CV-2038

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this ___5th___ day of January, 2010, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment of Defendants Kevin Wagner and Scott Nicholas (Doc. 35) is **GRANTED in part** and **DENIED in part** as follows:

    (1)    As to Counts III and IV, the motion will be **GRANTED**.

    (2)    As to the remainder, the motion will be **DENIED**.

                         /s/ A. Richard Caputo_____
                        A. Richard Caputo
                        United States District Judge